UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

CASE NO.: 2:21-cv-14318-MARTINEZ-MAYNARD

PATRICK WILLIAMSON,

    Plaintiff,

v.

INDIAN RIVER MEMORIAL HOSPITAL,
INC. d/b/a Cleveland Clinic Indian River
Hospital,

    Defendant.
_____/

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
## AND MEMORANDUM OF LAW IN SUPPORT

                                          **GREENBERG TRAURIG, P.A.**
                                          **CARAN ROTHCHILD, ESQ.**
                                          Florida Bar No. 983535
                                          **JENNA M. BOTTEY, ESQ.**
                                          Florida Bar No. 113020
                                          401 East Las Olas Boulevard, Suite 2000
                                          Fort Lauderdale, Florida 33301-4223
                                          Telephone: (954) 765-0500
                                          Facsimile:  (954) 765-1477
                                          Email:  rothchildc@gtlaw.com
                                          Email: botteyj@gtlaw.com
                                          Secondary Email: geistc@gtlaw.com
                                          Service Email: flservice@gtlaw.com
                                          *Attorneys for Defendant, Indian River Memorial Hospital, Inc. d/b/a Cleveland Clinic Indian River Hospital*

CASE NO.: 2:21-cv-14318-MARTINEZ-MAYNARD

Defendant, Indian River Memorial Hospital, Inc. d/b/a Cleveland Clinic Indian River Hospital ("CCIRH" or "Defendant"), pursuant to Fed. R. Civ. P. 56 and S.D. Fla. L.R. 56.1, hereby respectfully moves for entry of a final summary judgment in its favor and against Plaintiff, Patrick Williamson ("Williamson" or "Plaintiff"), on Plaintiff's Complaint and Demand for Jury Trial [ECF No. 1] (the "Complaint") in its entirety on the grounds that the pleadings and summary judgment evidence show that there is no genuine dispute as to any material fact and CCIRH is entitled to judgment as a matter of law.

## MOTION AND PRELIMINARY STATEMENT

### *Cleveland Clinic Indian River Hospital*

CCIRH is a 332-bed, not for profit hospital offering comprehensive medical services to the Treasure Coast community. [SOF ¶ 1]. Cleveland Clinic Indian River Hospital's mission is caring for life, researching for health, and educating those who serve. [SOF ¶ 2]. Its vision is to be the best place for care anywhere and the best place to work in healthcare, and its care priorities are: (1) patients, (2) Caregivers, (3) community, and (4) organization. [SOF ¶ 3]. CCIRH's stated values are: (1) quality & safety, (2) empathy, (3) inclusion, (4) integrity, (5) teamwork, and (6) innovation. [SOF ¶ 4].

### *The Behavioral Health Center*

CCIRH's Behavioral Health Center (the "BHC") provides inpatient services for children, adolescents, adults and seniors. [SOF ¶ 5]. Thousands of Treasure Coast residents have been helped back to the path of hope, happiness and a better quality of life through the center's inpatient and outpatient treatment, counseling services, classes and screenings. [SOF ¶ 6]. As part of the hospital, the BHC is uniquely qualified to combine expert behavioral health service with comprehensive medical care, including a full complement of diagnostic services. [SOF ¶ 7]. The 46-bed facility, located on a beautiful campus across the street from Cleveland Clinic Indian River Hospital, includes a gym, pool, shaded courtyards and bright airy rooms. [SOF ¶ 8].

The BHC's therapeutic team is interdisciplinary and includes board certified psychiatrists, experienced RNs, licensed social workers and mental health technicians. [SOF ¶ 9]. It embraces a patient-focused model of treatment that puts patients and their loved ones in the center and asks, "How can we help you?" [SOF ¶ 10]. A distinct advantage

CASE NO.: 2:21-cv-14318-MARTINEZ-MAYNARD

of having the BHC as part of the hospital is the availability to provide staff hospitalists and specialists to monitor patients for other medical issues. [SOF ¶ 11].

The hospital is a designated Baker Act receiving facility. [SOF ¶ 12]. Its trained professionals offer screening and assessment for behavioral health issues 24 hours a day, 7 days a week. [SOF ¶ 13]. The assessment provides an opportunity to share any issues that may be troubling the patient or their loved ones with an expert in behavioral health. [SOF ¶ 14].

BHC's clinicians, in consultation with CCIRH's medical staff, will make recommendations to best suit the patients' needs. [SOF ¶ 15]. These may range from community-based support services to short term inpatient hospitalization. [SOF ¶ 16].

### *Plaintiff's Treatment at CCIRH in January of 2019*

On January 17, 2019, Plaintiff arrived at and was received through the Emergency Department ("ED") at CCIRH via transport by Law Enforcement for a Baker Act examination. [JSOF ¶ 5]. Plaintiff was not accompanied by, and did not arrive at the ED with, any animal. [JSOF ¶ 6]. ED personnel conducted an examination of Plaintiff and determined that Plaintiff was eligible for admission to the BHC due to his suicidal ideations. [JSOF ¶ 7]. Plaintiff was admitted to the BHC the evening of January 17, 2019 upon being medically cleared at the ED. [JSOF ¶ 8]. Plaintiff was not accompanied by, and did not arrive at, the BHC with any animal. [JSOF ¶ 9]. Plaintiff received treatment at CCIRH – first in the ED and subsequently at the BHC – from January 17, 2019 to January 23, 2019 (referred to herein as "Plaintiff's January 2019 Treatment"). [JSOF ¶ 10].

Plaintiff's admission to the BHC on January 17, 2019 was initially involuntary under the provisions of Florida's Baker Act, but Plaintiff subsequently on January 18, 2019 agreed to voluntary admission to continue his treatment at CCIRH through January 23, 2019 when he was voluntarily discharged. [SOF ¶¶ 20, 24, 29]. During his admission in the BHC from January 17, 2019 to January 23, 2019, Plaintiff's condition improved and ultimately he was voluntarily discharged on January 23, 2019. [SOF ¶ 29].

### *Plaintiff's Purported Claims Against CCIRH*

Then, after almost three (3) years had passed since Plaintiff's life-saving care at CCIRH during Plaintiff's January 2019 Treatment, in January of 2021, Plaintiff for the first time alleged

that he had owned a service animal at the time of Plaintiff's January 2019 Treatment, and was discriminated against by CCIRH.

On August 6, 2021, Plaintiff filed his Complaint in this action, purporting to allege – albeit not entirely clear – three causes of action for disability discrimination under Title III of the ADA, the Rehabilitation Act, and the ACA. *See* Compl. at 1-13 [ECF No. 1]. Specifically, Plaintiff's Complaint appears to allege that CCIRH discriminated against Plaintiff on the basis of Plaintiff's disability by not allowing Plaintiff's dog, Gracie – who Plaintiff alleges was Plaintiff's "service animal" – to accompany or visit Plaintiff during Plaintiff's January 2019 Treatment and by not transferring Plaintiff to a different facility where he could be treated with a service animal. *See* Compl. at 1-13 [ECF No. 1].

However, each of Plaintiff's purported causes of action in the Complaint fail because: (1) Plaintiff has failed to establish that CCIRH had a discriminatory policy or practice in place during Plaintiff's January 2019 Treatment, (2) Plaintiff has failed to establish that Plaintiff ever triggered CCIRH's non-discriminatory policy or that he ever requested an accommodation from CCIRH, (3) Plaintiff has failed to establish that Plaintiff was denied any services or accommodations, (4) Plaintiff has failed to establish that his dog, Gracie, qualified as a "service animal" during Plaintiff's January 2019 Treatment, and (5) Plaintiff has failed to establish that he is entitled to any relief against CCIRH. [SOF ¶¶ 1-52].

Plaintiff's Complaint is expressly refuted by his own testimony, admissions, and documents, the absence of any documentary or testimonial evidence to support his claims, and CCIRH's documentary and testimonial evidence – all of which demonstrate that Plaintiff's claims are factually unsupported and not viable as a matter of law, and never were. [SOF ¶¶ 1-52].

Consequently, final summary judgment should be entered in favor of CCIRH and against Plaintiff on Plaintiff's Complaint in its entirety on the grounds that the pleadings and summary judgment evidence show that there is no genuine dispute as to any material fact and CCIRH is entitled to judgment as a matter of law.

## MEMORANDUM OF LAW IN SUPPORT

### I. STATEMENT OF UNDISPUTED MATERIAL FACTS

Defendant's Statement of Material Facts in Support of its Motion for Summary Judgment (referred to herein as "SOF") is filed as a separate document contemporaneously herewith, along with the Declaration of Anne W. Posey Pursuant to 28 U.S.C. § 1746 and the transcript and exhibits

of the depositions of Plaintiff (taken on May 26, 2022), Dr. Felicia Howard (taken on July 11, 2022), and Barbara Sloan (taken on May 27, 2022), each of which are incorporated herein. The parties' Joint Statement of Undisputed Facts filed on August 8, 2022 [ECF No. 65] ("JSOF") is also incorporated herein.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Perez, as Next Friend of minor F.V. v. Lake County Rowing Association*, No. 5:19-cv-661-Oc-30PRL, 2021 WL 405505, at *5 (M.D. Fla. Jan. 5, 2021) (citations omitted). "The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; the requirement is that there be no genuine issue of material fact." *Id.* (citations omitted). "The substantive law applicable to the claimed cause of action will identify which facts are material." *Id.* (citations omitted).

"Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial." *Id.* at *5 (citations omitted). "The evidence must be significantly probative to support the claims." *Id.* (citations omitted).

Additionally, in order to survive CCIHR's motion for summary judgment on Plaintiff's claims of discrimination, Plaintiff must "point to specific facts detailed in affidavits and depositions—that is, names, dates, incidents, and supporting testimony"; he cannot survive summary judgment on mere "unsupported allegations and speculations". *Cf. Roman v. Hatillo Cash & Carry, Inc.*, No. 17-1577, 2019 WL 8759095, at *5 (D.P. R. June 24, 2019) (citations omitted).

## III. THE APPLICABLE LEGAL FRAMEWORK

### *Plaintiff's Claims*

Plaintiff's Complaint purports to allege three causes of action for disability discrimination under Title III of the Americans with Disabilities Act (the "ADA"), Section 504 of the

Rehabilitation Act of 193 (the "Rehabilitation Act"), and Section 1557 of the Patient Protection and Affordable Care Act (the "ACA"). *See* Compl. [ECF No. 1].

Each of the three statutes upon which Plaintiff relies – Title III of the ADA, the Rehabilitation Act, and ACA – "impose effectively identical requirements" and, thus, courts typically consider claims brought under these statutes in tandem. *See Krist v. Beth Israel Medical Center*, No. 17-cv-01312, 2021 WL 4442943, at *6 (S.D. N.Y. Sept. 28, 2021) ("Because the ADA and Section 50 of the Rehabilitation Act impose effectively 'identical requirements,' courts typically consider claims brought under both statutes in tandem.") (citations omitted); *Francois v. Our Lady of the Lake Hosp.*, F.4th 370, 377-78 (5th Cir. 2021) ("The remedies, procedures, and rights available under the Rehabilitation Act parallel those available under the ADA", and, "[f]or disability-discrimination claims, [Section 1557 of the ACA] incorporates the substantive analytical framework of the [Rehabilitation Act]" and, thus, courts analyze [the Rehabilitation Act] and ACA claims together.") (citations omitted).

To recover under Title III (and, in turn, the Rehabilitation Act and ACA), a plaintiff must show: (1) "that he comes within the protections of the ADA as a person with a disability", (2) "that the defendant's establishment is subject to the mandates of Title III as a place of public accommodation", (3) "that the defendant has a discriminatory policy or practice in effect", (4) that he (the plaintiff) requested a reasonable modification in that policy or practice which, if granted, would have afforded him access to the desired goods"; (5) "that the requested modification—or a modification like it—was necessary to afford that access; and (6) "that the defendant nonetheless refused to modify the policy or practice." *Dudley v. Hannaford Bros. Co.*, 333 F.3d 299, 307 (1st Cir. 2003) (citations omitted); *Roman v. Hatillo Cash & Carry, Inc.*, No. 17-1577, 2019 WL 8759095, at *6 (D.P. R. June 24, 2019) (citations omitted).

Of particular pertinence here, a plaintiff cannot establish a claim for discrimination for failure to provide a reasonable accommodation—*"unless he demanded such an accommodation"* of the defendant. *See Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999) (holding that the plaintiff's discrimination claim failed because "she never requested a reasonable accommodation") (citations omitted); *Salinas v. Edwards Theater, Inc.*, No. CV 15-07698-BRO, 2016 WL 11756832, at *8 (C.D. Cal. Aug. 24, 2016) ("Plaintiff bears the burden of proving that a modification was requested and that the requested modification was reasonable.") (citations omitted). *Cf. Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1219 (11th Cir. 2008)

6

(discussing that "the duty to make a reasonable accommodation does not simply spring from the fact that the handicapped person wants such an accommodation made" and that a defendant "cannot be liable for refusing to grant a reasonable and necessary accommodation if the [defendant] never knew the accommodation was in fact necessary") (citations omitted); *Lapham v. Florida Fish & Wildlife Conservation Commission*, No. 5:19-cv-59-MMH-PRL, 2021 WL 3828869 (M.D. Fla. Aug. 26, 2021) (granting summary judgment in favor of defendants on plaintiff's claims that he requested accommodations under Title II of the ADA and the Rehabilitation Act in an action where the Magistrate Judge found that the individuals the plaintiff requested accommodations from had no authority to grant such accommodation).

With respect to service animals, the applicable law provides that "[g]enerally, a public accommodation shall modify policies, practices, or procedures to permit the use of a service animal by an individual with a disability" and that "[i]ndividuals with disabilities shall be permitted to be accompanied by their service animals in all areas of a place of public accommodation where members of the public, program participants, clients, customers, patrons, or invitees, as relevant, are allowed to go." *See* 28 C.F.R. § 36.302(c)(1) and (7). *See also Cordoves v. Miami-Dade County*, 92 F.Supp.3d 1221, 1230 (S.D. Fla. 2015).

"Service animal" is defined as "any dog that is individually trained to do work or perform tasks for the benefit of an individual with a disability, including a physical, sensory, psychiatric, intellectual, or other mental disability" wherein "[t]he work or tasks performed by [the] service animal must be directly related to the individual's disability." *See* 28 C.F.R. § 36.104. *Cordoves*, 92 F.Supp.3d at 1230 (citations omitted). "[T]he provision of emotional support, well-being, comfort, or companionship do[es] not constitute work or tasks for the purposes of this definition." *Cordoves*, 92 F.Supp.3d at 1230 (citations omitted). "[C]ourts have granted summary judgment if a plaintiff cannot show with any specificity a genuine issue of fact regarding a dog's training or status as a service animal." *Id.* at 1230-31. *See also Baugher v. City of Ellensburg, WA*, No. CV-06-3026-RHW, 2007 WL 858627, *5-*6 (E.D. Wash. Mar. 19, 2007) (holding that a "service dog must be trained to perform specific tasks or work . . . for the benefit of [the plaintiff]", and, thus, where the plaintiff failed to present admissible evidence setting her dog apart from "the ordinary pet", the plaintiff failed to show that her dog is a "service dog" under the ADA).

*Plaintiff's Requested Relief*

Albeit unclear, Plaintiff's Complaint appears to seek declaratory and injunctive relief, compensatory damages, damages for emotional distress, and attorneys' fees and costs for his claims of disability discrimination under Title III of the ADA, the Rehabilitation Act, and the ACA. *See* Compl. at 12-13, ¶¶ A-G [ECF No. 1].

However, "Title III of the ADA is a remedial statute" and, thus, plaintiffs are only permitted to seek injunctive, "forward-looking" relief. *See Roman v. Hatillo Cash & Carry, Inc.*, No. 17-1577, 2019 WL 8759095, at *5 (D.P. R. June 24, 2019) (citations omitted). "Money damages … are not recoverable under Title III of the ADA." *Baugher v. City of Ellensburg, WA*, No. CV-06-3026-RHW, 2007 WL 858627, 2 (E.D. Wash. Mar. 19, 2007) (citations omitted); *Roman*, 2019 WL 8759095, at *6 (citations omitted).

In order to establish standing for injunctive relief, "a plaintiff must show three essential elements: (1) he has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and, (3) it is likely that the injury will be redressed by a favorable decision." *See Salinas v. Edwards Theaters, Inc.*, No. CV 15-07698-BRO, 2016 WL 11756832, at *6 (C.D. Cal. Aug. 24, 2016) (citations omitted); *Krist v. Beth Israel Medical Center*, No. 17-cv-01312, 2021 WL 4442943, at *5 (S.D. N.Y. Sept. 28, 2021) (citations omitted) (internal quotation marks omitted). Moreover, "[i]n the context of a claim for injunctive relief under Title III of the ADA, a plaintiff must demonstrate a sufficient likelihood that he will again be wronged in a similar way. That is, he must establish a real and immediate threat of repeated injury." *See Salinas*, 2016 WL 11756832, at *7 (citations omitted) (internal quotation marks omitted); *Krist,* , 2021 WL 4442943, at *5 (citations omitted) (internal quotation marks omitted); *Curley v. Lifestream Behavioral Center, Inc.*, No. 5:15-cv-13-Oc-30PRL, 2015 WL 466452, at *3 (M.D. Fla. Aug. 6, 2015) ("Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges…a real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury." *Curley v. Lifestream Behavioral Center, Inc.*, No. 5:15-cv-13-Oc-30PRL, 2015 WL 466452, at *3 (M.D. Fla. Aug. 6, 2015) (citations omitted). "Past exposure to illegal conduct…unaccompanied by any continuing, present adverse effects cannot establish Article III standing for purposes of injunctive relief." *Krist,* 2021 WL 4442943, at *5 (citations omitted) (internal quotation marks omitted).

The Rehabilitation Act and ACA, on the other hand, permit plaintiffs to obtain certain monetary damages; however, in order to obtain such monetary damages the plaintiff "must prove that the entity sued engaged in intentional discrimination, which requires a show of 'deliberate indifference.'" *See, e.g., Perez, as Next Friend of minor F.V. v. Lake County Rowing Association*, No. 5:19-cv-661-Oc-30PRL, 2021 WL 405505, at *6 (M.D. Fla. Jan. 5, 2021) (citations omitted); *Curley,* 2015 WL 466452, at *2 ("Section 504 [of the Rehabilitation Act of 1973] permits an award of compensatory damages only where a plaintiff has asserted sufficient factual allegations from which the court can infer discriminatory intent" and "[a] plaintiff may prove discriminatory intent by showing that a defendant was deliberately indifferent to his statutory rights.") (citations omitted). "[D]eliberate indifference is an exacting standard, which requires showing more than gross negligence." *Curley*, 2015 WL 466452, at *2 (citations omitted) (internal quotation marks omitted); *Krist,* 2021 WL 4442943, at *9 ("The standard for intentionality under the Rehabilitation Act is a defendant's 'deliberate indifference,' defined as a 'deliberate choice, rather than negligence or bureaucratic inaction.'") (citations omitted). "To establish deliberate indifference, a plaintiff must show that the defendant *knew* that harm to a federally protected right was substantially likely and *failed* to act on that likelihood." *Curley,* 2015 WL 466452, at *2 (citations omitted) (internal quotation marks omitted); *Perez, as Next Friend of minor F.V. v. Lake County Rowing Association*, No. 5:19-cv-661-Oc-30PRL, 2021 WL 405505, at *6 (M.D. Fla. Jan. 5, 2021) ("'Deliberate indifference' requires proof that 'the defendant knew that harm to a federally protected right was substantially likely and…failed to act on that likelihood.'") (citations omitted). *See also Krist,* 2021 WL 4442943, at *9 ("Deliberate indifference occurs where: (1) an official or policymaker who—at a minimum—has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf, (2) has actual knowledge of discrimination against an individual with a disability, and (3) fails to adequately respond.") (citations omitted).

Emotional damages are not recoverable under Title III of the ADA, the Rehabilitation Act, or the ACA. *See Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S. Ct. 1562, 1576 (2002) (holding that emotional distress damages are not recoverable under the antidiscrimination provisions of the Rehabilitation Act or the ACA).

IV. **APPLICATION OF LAW TO THE UNDISPUTED MATERIAL FACTS**[1]

Here, Plaintiff cannot establish that he is entitled to any relief under Title III of the ADA, the Rehabilitation Act, or the ACA, as he cannot establish (1) that CCIRH had a discriminatory policy or practice in place during Plaintiff's January 2019 Treatment, (2) that Plaintiff ever triggered CCIRH's non-discriminatory policy or that he ever requested an accommodation from CCIRH, (3) that Plaintiff was denied any services or accommodations, (4) that Plaintiff's dog, Gracie, qualified as a "service animal" during Plaintiff's January 2019 Treatment, or (5) that he is entitled to any relief against CCIRH. [SOF ¶¶ 1-52].

A. **Plaintiff has failed to establish that CCIRH had a discriminatory policy or practice in place.**

Plaintiff has not brought forth any evidence that CCIRH had a discriminatory policy or practice in place at the time of Plaintiff's January 2019 Treatment. Rather, it is undisputed that in 2008, CCIRH implemented an ADA compliant Service Animal policy, and had an updated version of that policy in place at the time of Plaintiff's treatment in 2019. [SOF ¶¶ 17-19, 30].

Consequently, Plaintiff cannot establish any of his claims for disability discrimination – under Title III of the ADA under Count I, the Rehabilitation Act under Count II, or the ACA under Count III – and the Court should accordingly grant CCIRH's motion for summary judgment as to Plaintiff's Complaint in its entirety. *See Dudley v. Hannaford Bros. Co.*, 333 F.3d 299, 307 (1st Cir. 2003) (requiring proof that "the defendant ha[d] a discriminatory policy or practice in effect" to establish a claim under Title III of the ADA) (citations omitted). *See also Francois v. Our Lady of the Lake Hosp.*, F.4th 370, 377-78 (5th Cir. 2021) ("The remedies, procedures, and rights available under the Rehabilitation Act parallel those available under the ADA", and, "[f]or disability-discrimination claims, [Section 1557 of the ACA] incorporates the substantive analytical framework of the [Rehabilitation Act]" and, thus, courts analyze [the Rehabilitation Act] and ACA claims together.") (citations omitted).

---

[1] For purposes of this motion only, CCIRH assumes that Plaintiff has established that "he comes within the protections of the ADA as a person with a disability" and that CCIRH "is subject to the mandates of Title III as a place of public accommodation".

### B. Plaintiff has failed to establish that Plaintiff ever triggered CCIRH's non-discriminatory policy or that he ever requested an accommodation from CCIRH.

Plaintiff has not set forth any evidence that Plaintiff presented – or CCIRH ever observed – Plaintiff's dog, Gracie, at CCIRH during the relevant period of time from January 17, 2019 to January 23, 2019. [SOF ¶¶ 31-48]. It is undisputed that Plaintiff arrived at CCIRH's ED on January 17, 2019 without his dog, Gracie, and Plaintiff has not presented any other evidence that he or anyone else on his behalf physically presented Plaintiff's dog, Gracie, to anyone at CCIRH, or that anyone at CCIRH ever even knew of or saw Plaintiff's dog, Gracie, during Plaintiff's January 2019 Treatment. [JSOF ¶¶ 6, 9]; [SOF ¶¶ 31-48].

Plaintiff has also failed to bring forth any evidence that either he or anyone on his behalf made a request for Plaintiff's dog, Gracie, to accompany or visit Plaintiff during Plaintiff's January 2019 Treatment to any employee or authorized representative of CCIRH. [SOF ¶¶ 31-48]. At best, Plaintiff's friend, Bruce Cady, and cousin, Samantha Obbagy, testified that they made some uncertain request to some unidentifiable individuals they said were at CCIRH when they visited CCIRH during Plaintiff's January 2019 Treatment, but they could not confirm names, employment status, job descriptions, or any other positively identifying information of these alleged individuals. Similarly, Plaintiff testified that he did not know the names of anyone he made requests to—be it for his dog, Gracie, to accompany or visit him or for him to be transferred to the VA. [SOF ¶¶ 47-48]. At best, Plaintiff testified that he made requests to "doctors" or "medical professional", but Plaintiff could not name or otherwise positively identify any of the "doctors" or "medical professionals" he allegedly made requests for accommodations to during Plaintiff's January 2019 Treatment.[2] [SOF ¶¶ 47-48]. Not only is the testimony of Plaintiff and his family and friends directly refuted by the other record evidence in this action, but, even standing on its own, such unspecified allegations lacking in any specifics such as names, job titles, or any other positively identifying descriptors is insufficient to support Plaintiff's burden and overcome summary judgment on this issue. [SOF ¶¶ 31-48]. *Cf. Roman v. Hatillo Cash & Carry, Inc.*, No. 17-1577, 2019 WL 8759095, at *5 (D.P. R. June 24, 2019) (explaining that a plaintiff must "point to specific

---

[2] Additionally, the record evidence, including a form Plaintiff acknowledged receiving and signing, reflects that CCIRH is "not legally or vicariously responsible for the conduct or actions of the physicians practicing in the Hospital…." [SOF ¶ 22].

facts detailed in affidavits and depositions—that is, names, dates, incidents, and supporting testimony" in order to survive summary judgment).

In fact, Plaintiff completed several forms during Plaintiff's January 2019 Treatment wherein he had several opportunities to request – or even so much as mention – a service animal, his dog, Gracie, or a transfer to the VA to be with a service animal or Plaintiff's dog, Gracie. [SOF ¶¶ 25-27]. However, Plaintiff never once mentioned a service animal, his dog, Gracie, or a transfer to the VA to be with a service animal or Plaintiff's dog, Gracie. [SOF ¶¶ 25-27]. Additionally, as a new patient, during Plaintiff's January 2019 Treatment, Plaintiff had a treatment team, consisting of at least ten (10) professionals including a psychiatrist, a member of the social work team, several nurses and mental health technicians, who saw him and assessed him daily. [SOF ¶ 37]. Yet, notwithstanding, Plaintiff could not identify a single person on his treatment team, by name, title or other identifying information that he even mentioned his dog to. [SOF ¶¶ 47-48].

Consequently, and although CCIRH had a Service Animal policy in effect at the time of Plaintiff's January 2019 Treatment, Plaintiff has failed to proffer sufficient evidence that either he or anyone else on his behalf triggered CCIRH's review and implication of its Service Animal policy or that he or anyone else on his behalf requested any accommodations from said policy for Plaintiff to be accompanied or visited by his dog, Gracie, during Plaintiff's January 2019 Treatment. [SOF ¶¶ 30-48].

Therefore, because Plaintiff cannot establish any of his claims for disability discrimination – under Title III of the ADA under Count I, the Rehabilitation Act under Count II, or the ACA under Count III – the Court should accordingly grant CCIRH's motion for summary judgment as to Plaintiff's Complaint in its entirety. *See Dudley v. Hannaford Bros. Co.*, 333 F.3d 299, 307 (1st Cir. 2003) (requiring proof that "the defendant ha[d] a discriminatory policy or practice in effect" and that plaintiff "requested a reasonable modification in that policy or practice" in order to establish a claim under Title III of the ADA) (citations omitted). *See also Francois v. Our Lady of the Lake Hosp.*, F.4th 370, 377-78 (5th Cir. 2021) ("The remedies, procedures, and rights available under the Rehabilitation Act parallel those available under the ADA", and, "[f]or disability-discrimination claims, [Section 1557 of the ACA] incorporates the substantive analytical framework of the [Rehabilitation Act]" and, thus, courts analyze [the Rehabilitation Act] and ACA claims together.") (citations omitted).

### C. **Plaintiff has failed to establish that Plaintiff was denied any services or accommodations.**

Plaintiff has not set forth any evidence that he was denied services by CCIRH during Plaintiff's January 2019 Treatment. [SOF ¶¶ 20-29]. Rather, the undisputed record evidence reflects that not only was Plaintiff admitted and treated at CCIRH, but his condition dramatically improved, during Plaintiff's January 2019 Treatment. [SOF ¶¶ 20-29].

Moreover, Plaintiff has failed to establish any evidence that CCIRH did not permit Plaintiff's dog, Gracie, to accompany or visit him at the ED or BHC. [SOF ¶¶ 31-48]. Again, Plaintiff's only purported evidence regarding requests for Plaintiff's dog, Gracie, to accompany or visit Plaintiff during Plaintiff's January 2019 Treatment, is insufficient to establish that such requests were, in fact, made to CCIRH or any authorized individuals on CCIRH's behalf. *Cf. Roman v. Hatillo Cash & Carry, Inc.*, No. 17-1577, 2019 WL 8759095, at *5 (D. P.R. June 24, 2019) (explaining that a plaintiff must "point to specific facts detailed in affidavits and depositions—that is, names, dates, incidents, and supporting testimony" in order to survive summary judgment).

In fact, ironically, one of the accommodations Plaintiff allegedly requested during Plaintiff's January 2019 Treatment – which Plaintiff has failed to bring forth sufficient evidence to support of[3] – was for CCIRH to *cease* providing services to Plaintiff and transfer Plaintiff to a different, unrelated facility for his further treatment.

Consequently, Plaintiff cannot establish any of his claims for disability discrimination – under Title III of the ADA under Count I, the Rehabilitation Act under Count II, or the ACA under Count III – and the Court should accordingly grant CCIRH's motion for summary judgment as to Plaintiff's Complaint in its entirety. *See also Smith v. Moorman*, 47 Fed.Appx. 755, 755-57 (holding that where the record indicated that the veterans hospital "did not deny [the plaintiff] medical treatment and that [the plaintiff's] disability played no part in the decision to prohibit [the plaintiff's] dog from staying with him during his hospitalization at the [veterans administration]", the court was justified in granting the veterans hospital's motion for summary judgment) (6th Cir. 2002).

---

[3] Plaintiff has failed to establish any evidence that he requested to be transferred to the VA to be accompanied or visited by a service animal. [SOF ¶¶ 31-48]. In fact, from January 18, 2019 through January 23, 2019, Plaintiff's treatment at the BHC was on voluntary status. [SOF ¶ 24].

D. **Plaintiff has failed to establish that his dog, Gracie, qualified as a "service animal" in January of 2019.**

Although the Court should grant CCIRH's motion for summary judgment for any one of the above-referenced reasons, even assuming that Plaintiff had established that CCIRH had a discriminatory policy or practice in place during Plaintiff's January 2019 Treatment and that Plaintiff triggered CCIRH's policy or requested an accommodation from CCIRH during Plaintiff's January 2019 Treatment with respect to Plaintiff's dog, Gracie, the Court should nevertheless grant CCIRH's motion for summary judgment because Plaintiff has failed to establish that his dog, Gracie, even qualified as a "service animal" under applicable law during the relevant period of time from January 17, 2019 through January 23, 2019. [SOF ¶¶ 49-51].

Specifically, in order to establish that Plaintiff's dog, Gracie, qualified as a "service animal" during Plaintiff's January 2019 Treatment, Plaintiff must establish that Gracie is "individually trained" to "do work or perform tasks for the benefit of" Plaintiff, which tasks must "be directly related to" Plaintiff's disability. *See* 28 C.F.R. § 36.104. However, Plaintiff has failed to set forth any evidence that Gracie was individually trained to do work or perform tasks for the benefit of *Plaintiff*. [SOF ¶ 49]. At best, Plaintiff testified – vaguely – that, after receiving Gracie, he worked with Gracie to "acclimate" her to Plaintiff and "get to know" Plaintiff. [SOF ¶ 50]. Plaintiff explained that "the acclimation time probably took six months" and "by that [Plaintiff meant Plaintiff] felt comfortable if [he] let her out in the front yard off of the leash, she would not run away." [SOF ¶ 51].

However, such is simply insufficient to establish that Plaintiff's dog, Gracie, qualified as a "service animal" under Title III of the ADA, the Rehabilitation Act, or the ACA. *See Baugher v. City of Ellensburg, WA*, No. CV-06-3026-RHW, 2007 WL 858627, *5-*6 (E.D. Wash. Mar. 19, 2007) (holding that service animals "must be trained to perform specific tasks or work" for the benefit of the plaintiff and where there was no evidence to suggest that the purported service animal "was trained to perform specific *tasks or work* for the benefit of [the plaintiff]", the plaintiff failed to establish that her dog was a "service animal" under the ADA). *Cf. Roman v. Hatillo Cash & Carry, Inc.*, No. 17-1577, 2019 WL 8759095, at *5 (D.P. R. June 24, 2019).

Consequently, because Plaintiff has not established that Gracie qualified as a "service animal" under Title III of the ADA, the Rehabilitation Act, or the ACA, the Court should grant CCIRH's motion for summary judgment as to Plaintiff's Complaint in its entirety.

### E. **Plaintiff has failed to establish that he is entitled to any relief against CCIRH.**

Still more, even assuming that Plaintiff had established that CCIRH had discriminated against Plaintiff on the basis of Plaintiff's disability under any of Title III of the ADA, the Rehabilitation Act, or the ACA, the Court should nevertheless grant summary judgment in favor of CCIRH on each of Plaintiff's claims in the Complaint because Plaintiff has failed to establish that he is entitled to any relief.

#### i. **Plaintiff is not entitled to declaratory judgment against CCIRH.**

For the reasons more fully discussed above, Plaintiff is not entitled to the requested relief of "[d]eclaratory judgment that [CCIRH's] policies, procedures, and practices have subjected Plaintiff to discrimination in violation of Title III of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act of 1933, and the Affordable Care Act" – because Plaintiff has failed to set forth any evidence that CCIRH's policies, procedures, or practices – either during Plaintiff's January 2019 Treatment or otherwise – were in violation of Title III of the ADA, the Rehabilitation Act, or the ACA. [SOF ¶¶ 17-19, 30]. In fact, the undisputed record evidence reflects that CCIRH has at all relevant times had a non-discriminatory policy in place regarding service animals. [SOF ¶¶ 17-19, 30]. Additionally, the undisputed record evidence establishes that when Plaintiff did, in fact, present his dog, Gracie, at CCIHR, she was permitted to accompany him on his visits. [SOF ¶ 52].

#### ii. **Plaintiff is not entitled to injunctive relief.**

Plaintiff is also not entitled to injunctive relief against CCIRH because in order to establish standing for injunctive relief, "a plaintiff must show three essential elements: (1) he has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and, (3) it is likely that the injury will be redressed by a favorable decision"—which Plaintiff has not – and cannot – do. [SOF ¶¶ 31-48, 52]. *See Salinas*, 2016 WL 11756832, at *6 (citations omitted); *Krist*, 2021 WL 4442943, at *5 (citations omitted) (internal quotation marks omitted). Specifically, the undisputed record evidence reflects that CCIRH has at all times had a non-discriminatory policy on this issue, and that Plaintiff has returned to CCIRH since Plaintiff's January 2019 Treatment, including with his dog, Gracie. [SOF ¶¶ 31-48, 52]. Consequently, Plaintiff has not – and cannot – establish any "real and immediate" threat of any future injury relating to his dog, Gracie, as would be required for Plaintiff to be entitled to injunctive relief

against CCIRH in connection with his claims. *See Salinas*, 2016 WL 11756832, at *7; *Krist*, 2021 WL 4442943, at *5; *Curley*, 2015 WL 466452, at *3.

Thus, at a minimum, even assuming Plaintiff could establish "that the defendant has a discriminatory policy or practice in effect", that Plaintiff "requested a reasonable modification in that policy or practice which, if granted, would have afforded him access to the desired goods", that "the requested modification—or a modification like it—was necessary to afford that access", and that CCIRH "nonetheless refused to modify the policy or practice" – which Plaintiff has not and cannot do – Plaintiff's cause of action under Title III of the ADA (Count I) fails in its entirety because the only relief available to plaintiffs under Title III of the ADA is injunctive, "forward-looking" relief, and Plaintiff has not – and cannot – establish standing to seek such relief. *See Roman*, 2019 WL 8759095, at *5 (citations omitted); *Curley,* , 2015 WL 466452, at *3 ("With respect to ADA cases, courts have held that a plaintiff lacks standing to seek injunctive relief unless he alleges facts giving rise to an inference that he will suffer future discrimination by the defendant.") (citations omitted) (internal quotation marks omitted).

### iii. Plaintiff is not entitled to compensatory damages.

While Title III of the ADA only permits recovery of injunctive, "forward-looking" relief, the Rehabilitation Act and ACA do permit plaintiffs' recovery of compensatory damages, but only where a plaintiff has proven "that [the defendant] engaged in intentional discrimination, which requires a show of 'deliberate indifference'" – which Plaintiff has not and cannot do here. *See Perez, as Next Friend of minor F.V. v. Lake County Rowing Association*, No. 5:19-cv-661-Oc-30PRL, 2021 WL 405505, at *6 (M.D. Fla. Jan. 5, 2021) (citations omitted).

Specifically, in order to establish "deliberate indifference" as is required for recovery of compensatory damages under the Rehabilitation Act and the ACA, a plaintiff must show "more than gross negligence." *Curley*, 2015 WL 466452, at *2 (citations omitted) (internal quotation marks omitted). Rather, a plaintiff must show "that the defendant *knew* that harm to a federally protected right was substantially likely and *failed* to act on that likelihood." *Id.*

As more fully discussed above, Plaintiff has failed to establish that CCIRH even knew about Plaintiff's dog, Gracie, or any alleged requests for accommodation with respect to Plaintiff's dog, Gracie. [SOF ¶¶ 31-48]. Consequently, Plaintiff most certainly cannot establish the "exacting standard" of "deliberate indifference" as would be required to recover compensatory damages

against CCIRH. *See Curley*, 2015 WL 466452, at *2 (citations omitted) (internal quotation marks omitted).

### iv. **Plaintiff is not entitled to damages for emotional distress.**

Although not entirely clear whether Plaintiff even seeks damages for emotional distress, such damages are nevertheless not recoverable under Title III of the ADA, the Rehabilitation Act, or the ACA. *See Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S. Ct. 1562, 1576 (2002) (holding that emotional distress damages are not recoverable under the antidiscrimination provisions of the Rehabilitation Act or the ACA).

Consequently, because Plaintiff has not and cannot establish entitlement to any relief under any of his claims in the Complaint, the Court should grant summary judgment in favor of CCIRH as to Plaintiff's Complaint in its entirety.

### V. CONCLUSION

WHEREFORE, Defendant, Indian River Memorial Hospital, Inc. d/b/a Cleveland Clinic Indian River Hospital, respectfully requests this Court enter final summary judgment in its favor and against Plaintiff, Patrick Williamson, on Plaintiff's Complaint Demand for Jury Trial (the "Complaint") [ECF No. 1] in its entirety, together with such other and further relief as this Court deems just and proper.

Dated: August 8, 2022

<div style="margin-left: 40%;">

**GREENBERG TRAURIG, P.A.**
*Attorneys for Defendant, Indian River Memorial Hospital, Inc. d/b/a Cleveland Clinic Indian River Hospital*
401 East Las Olas Boulevard, Suite 2000
Fort Lauderdale, Florida 33301-4223
Telephone: (954) 765-0500
Facsimile: (954) 765-1477

*/s/ Caran Rothchild*
CARAN ROTHCHILD, ESQ.
Florida Bar No. 983535
Email: rothchildc@gtlaw.com
Secondary Email: geistc@gtlaw.com
Service Email: flservice@gtlaw.com
JENNA M. BOTTEY, ESQ.
Florida Bar No. 113020
Email: botteyj@gtlaw.com
Secondary Email: geistc@gtlaw.com

</div>

CASE NO.: 2:21-cv-14318-MARTINEZ-MAYNARD

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of August, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

                                                  */s/ Caran Rothchild*
                                                  CARAN ROTHCHILD, ESQ.

## **SERVICE LIST**

**SHARON CASERTA, ESQ.**
Florida Bar No. 0023117
Morgan & Morgan
Deaf/Disability Rights
76 South Laura Street, Suite 1100
Jacksonville, Florida 32202
Telephone: (904) 361-0078
Videophone: (904) 245-1121
Facsimile: (904) 361-4305
Email: scaserta@forthepeople.com
*Counsel for Plaintiff, Patrick Williamson*